**United States Bankruptcy Court, Northern District of Illinois**

| Name of Assigned Judge | **Carol A. Doyle** | Case No. | 17 B 09308 |
|---|---|---|---|
| **DATE** | April 29, 2021 | **ADVERSARY NO.** | 19 A 00564 |
| **CASE TITLE** | Ronald Peterson as Trustee v. Illinois Department of Revenue | | |

**DOCKET ENTRY TEXT**

Defendant Illinois Department of Revenue's motion to dismiss is denied.

[For further details see text below.]

**STATEMENT**

    Ronald Peterson filed this adversary proceeding as the trustee of chapter 7 debtor Mack Industries, Ltd. He sued the Illinois Department of Revenue ("IDOR") to avoid and recover alleged fraudulent transfers made by Mack to pay taxes owed by other entities. IDOR moved to dismiss. It argues that the trustee must stand in the shoes of a creditor – the "triggering creditor" – who could have sued IDOR on the petition date and there is no such creditor. IDOR is correct about one of the trustee's two triggering creditors but it has not shown that the second creditor could not have sued it on the petition date. IDOR's motion is denied.

## STATEMENT

1.  Background

The trustee filed this adversary proceeding along with approximately 400 similar ones seeking to avoid transfers that were allegedly fraudulent or preferential. In almost all of those cases, he sued as trustee of two chapter 7 debtors: Mack and Oak Park Avenue Realty, Ltd. ("Oak Park"). He alleged that transfers were fraudulent because Mack was trying to deplete its assets to prevent one of its creditors from collecting from it.

According to all of the complaints, Mack had a contract to manage hundreds of properties owned by American Residential Leasing Company LLC. Mack was required to lease the properties, maintain them, pay the property taxes, and pay certain rental and other fees to American Residential. In mid-2014, Mack tried to renegotiate the contract with American Residential. During negotiations, a Mack vice president allegedly threatened that Mack would deplete its assets so American Residential could not collect if it refused to renegotiate. The trustee contends that Mack carried out this plan by using its assets for the benefit of other entities. He seeks to recover from many parties who purchased property from Mack or a related entity and then hired Oak Park to manage the properties, including collecting rent from tenants. Mack often paid those parties even though Oak Park owed them the money. The trustee is also attempting to recover from parties who provided goods and services to Mack that Mack used to improve properties owned by other entities.

Here, the trustee is seeking to recover approximately $115,000 in taxes paid by Mack on behalf of James K. McClelland, the owner of the interests of Mack, and his wife, as well as a related entity - Mack Landscape & Design LLC. The transfers were made between June 2013 and August 2014.

In Count 1, the trustee seeks to avoid the tax payments as fraudulent based on constructive fraud under 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B), and 550(a) and 740 ILCS 160/5(a)(2), 6(a), and 8(a). He alleges that Mack did not receive reasonably equivalent value for the payments because it paid taxes owed by others. In Count 2, the trustee seeks to avoid the transfers based on actual fraud under 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A), and 550(a) and 740 ILCS 160/5(a)(1) and 8(a). He contends that the payments were made as part of the alleged scheme to defraud American Residential by depleting Mack's assets. In Count 3, the trustee seeks to disallow IDOR's claim in Mack's bankruptcy case unless IDOR pays the amounts it owes under Counts 1 and 2.

IDOR moved to dismiss all three claims. It notes that all the transfers were made more than two years before the petition date, March 24, 2017. It contends that the claims brought under § 548(a)(1)(A) (actual fraud) and § 548(a)(1)(B) (constructive fraud) are therefore barred by the two-year limitations period in § 548(a)(1). It also argues that the trustee's claims under §

## STATEMENT

544(b)(1) must be dismissed. It contends that § 544(b)(1) allows the trustee to stand in the shoes of an unsecured creditor who could have pursued the claim against IDOR outside of bankruptcy on the petition date but there is no such creditor. Illinois law permits a party to sue the State of Illinois only within two years of the date on which the claim accrued. IDOR contends that the 2-year period had expired by the petition date.[1]

The trustee concedes that he cannot recover under § 548(a)(1)(A) or (a)(1)(B) because the 2-year limitations period for those claims expired before he filed this adversary proceeding. He contends, however, that he can recover under § 544(b)(1) on behalf of two triggering creditors - American Residential and the Internal Revenue Service - who could have sued IDOR under the Illinois Uniform Fraudulent Transfer Act ("IUFTA") on the petition date. He argues that the Illinois statute with the two-year time limit for bringing claims against the State does not apply here.

IDOR is correct that American Residential could not have sued IDOR on the petition date to avoid the transfers in question. IDOR has failed to establish, however, that the same is true for the IRS. IDOR's motion will therefore be denied.

2. Section 544(b)

Chapter 5 of the Bankruptcy Code grants a trustee the power to avoid various kinds of transfers. Section 548(a)(1) creates a cause of action that permits a trustee to avoid transfers made "within two years before the date of the filing of the petition" based on constructive fraud or actual fraud. 11 U.S.C. § 548(a)(1); *In re Equipment Acquisition Res., Inc.*, 742 F.3d 743, 746 (7th Cir. 2014). Section 544(b)(1) permits a trustee to assert the rights of an unsecured creditor to avoid a transfer under non-bankruptcy law. It provides:

> (b)(1) Except as provided in (b)(2), the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . . .

11 U.S.C. § 544(b)(1).

This provision allows the trustee to stand in the shoes of an unsecured creditor who could have sued the transferee for fraudulent transfers based on state law on the petition date. Unlike § 548(a), § 544(b) is "derivative of state law." *Equipment Acquisitions*, 742 F.3d at 746. It "enables a trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy – except the trustee will recover the property for the benefit of the estate."

---

[1] IDOR argues that Count 3 must be dismissed because it relies on Counts 1 and 2.

-3-

STATEMENT

*Id*. The effect of this provision is to expand the "look back" or limitations period for the trustee from the two years provided for claims under § 548(a)(1) to the four years available under IUFTA, 740 ILCS 160/10.

To state a claim under § 544(b)(1), the trustee must identify a triggering creditor who could have brought suit against IDOR on the petition date. As the Seventh Circuit has explained, "[s]ection 544(b) is unique in another regard: its terms require the actual existence of an unsecured creditor that could have brought the state-law action itself. 'If there are no creditors against whom the transfer is voidable under the applicable law, the trustee is powerless to act under § 544(b)(1).'" *Id.* (quoting 5 Collier on Bankruptcy ¶ 544.06[1] (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2013)). The *Equipment Acquisition* court further explained:

> In other words, the trustee stands in the shoes of an actual unsecured creditor. And if the actual creditor could not succeed *for any reason* – whether due to *the statute of limitations*, estoppel, res judicata, waiver, *or any other defense* - then the trustee is similarly barred and cannot avoid the transfer. [Citation omitted]. By contrast, there is no such limitation in § 548. The trustee stands in its own shoes and exercises rights bestowed by the Bankruptcy Code itself.

742 F.3d at 746 (italics added).

In *Equipment Acquisitions*, the court held that a chapter 11 debtor exercising a trustee's rights could not recover fraudulent transfers under IUFTA from the IRS because the claim would have been barred by the United States' sovereign immunity outside of bankruptcy. The court applied a two-part test for a federal agency's liability: (1) has there been a waiver of sovereign immunity, and (2) "whether the source of substantive law upon which the claimant relies provides an avenue for relief." *Id*. at 746-47 (quoting *FDIC v. Meyer*, 510 U.S. 471, 484, 114 S.Ct. 996 (1994)). The court determined that although the U.S. waived its sovereign immunity regarding sections of the Bankruptcy Code listed in § 106(a), 11 U.S.C. § 106(a), this waiver did not apply to creditors pursuing claims under IUFTA against the United States outside of bankruptcy. The United States' immunity would have stopped any creditor from recovering from the IRS outside of bankruptcy. It therefore prevented a trustee from recovering against the IRS in the bankruptcy case. The court concluded that nothing in the United States' waiver of sovereign immunity through § 106(a) "gives the trustee greater rights to avoid transfers than the unsecured creditor would have under state law." *Id*. at 748.

*Equipment Acquisitions* dealt with the United States' sovereign immunity but its holding applies equally to a state asserting its sovereign immunity or any other basis for defeating an

**STATEMENT**

unsecured creditor's claim outside of bankruptcy.[2]  IDOR acknowledges that, unlike the United States in *Equipment Acquisitions,* it is not fully immune from suit under IUFTA.  It notes that Illinois' 1970 Constitution abolished sovereign immunity in Illinois.  IDOR relies instead on the State Lawsuit Immunity Act.  745 ILCS 5/1.  It provides that the State of Illinois "shall not be made a defendant or a party in any court" except as provided in the Illinois Court of Claims Act (and two other statutes not relevant here).  The Court of Claims Act gives the Illinois Court of Claims exclusive jurisdiction over all claims brought against the State based on Illinois law (with a few exceptions not relevant here).  705 ILCS 505/8(a).  It also provides various limitations periods for actions filed in the Court of Claims.  705 ILCS 505/22.  It states:  "Every claim cognizable by the Court and not otherwise sooner barred by law shall be forever barred from prosecution therein unless it is filed with the Clerk of the Court within the times set forth as follows."  *Id.*  A catch-all provision then states: "All other claims must be filed within two years after it first accrues . . . ."  705 ILCS 505/22(h).  Claims under IUFTA fall within this 2-year catch-all provision.  705 ILCS 505/22(h).  Illinois courts have interpreted these limitations periods to be jurisdictional.  *Reyes v. Court of Claims of State of Ill.*, 299 Ill. App. 3d 1097 (1st Dist. 1998); *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 505 (1st Dist. 1997).

IDOR acknowledges that claims against the State can be brought in bankruptcy court despite the Illinois legislature's grant of exclusive jurisdiction over claims against the State to the Illinois Court of Claims.  IDOR argues, however, that a triggering creditor suing IDOR on the petition date would be bound by the limitations periods in the Court of Claims Act so the trustee standing in the shoes of that creditor is similarly bound.  This is correct.  To state a claim against IDOR under § 544(b)(1), the trustee must identify an unsecured creditor who could have sued IDOR in the Illinois Court of Claims on the petition date.

The trustee has identified two triggering creditors:  American Residential and the IRS.  IDOR contends that both creditors would have been barred by the 2-year limitations period in § 22(h).  It argues that any fraudulent transfer claims accrued under IUFTA when the transfers were made in 2013 and 2014 – more than two years before the March 24, 2017 petition date.  The trustee responds that § 22(h) would not have prevented either American Residential or the IRS from suing IDOR on the petition date for a number of reasons.  The issues for each triggering creditor will be considered in turn.

---

[2]The *Equipment Acquisitions* court stated that § 106(a) also waives states' sovereign immunity.  Section 106 addresses the sovereign immunity of "a governmental unit" but the Supreme Court has held that the states, in effect, waived their sovereign immunity by ratifying the Bankruptcy Clause in the Constitution.  *Central Va. Comm. College v. Katz*, 546 U.S. 356, 378 (2006); *In re Total Finance Investment, Inc.*, 19-bk-3734, 2019 WL 2432089 at *8 (Bankr. N.D. Ill. June 11, 2019).  IDOR is not directly asserting sovereign immunity, though, and the source of Illinois' waiver of sovereign immunity in bankruptcy cases is not important here.

## STATEMENT

3.  American Residential

The trustee argues that American Residential could have sued IDOR on the petition date despite the Court of Claims Act for three reasons. First, he asserts that the 2-year period in § 22(h) is not a "traditional" statute of limitations but a special jurisdictional prerequisite to suit in the Court of Claims. He contends that this "jurisdictional" bar would not apply in the bankruptcy court because it has jurisdiction over the claim through § 544(b). The trustee cites no authority for this argument. He is correct that this court has jurisdiction over the trustee's claim through § 544(b) but characterizing the 2-year limit in § 22(h) as "jurisdictional" does not make it inapplicable here. As the *Equipment Acquisitions* court held, the trustee cannot assert a creditor's claim under § 544(b)(1) if it would fail outside of bankruptcy "for any reason," including the statute of limitations "or any other defense." 742 F.3d at 746. The two-year limit in § 22(h) would have applied to American Residential whether it is called jurisdictional or not so it applies to the trustee's claims here.

Second, the trustee argues that § 22(h) does not bar his claims because his right to sue did not "accrue" until the petition date, when the trustee's rights under § 544(b)(1) arose. The trustee is correct that his rights under § 544(b)(1) arose on the petition date and that § 546(a)(1)(A) gives him two years from that date to bring claims under § 544(b)(1). But those provisions do not eliminate the separate requirement that the *triggering creditor* must have had a valid claim against IDOR on the petition date. *Boyer v. Crown Stock Distr., Inc.*, 587 F.3d 787, 791 (7th Cir. 2009) (an avoidance action under § 544(b) is timely if the unsecured creditor's claim was timely under applicable nonbankruptcy law at the time the bankruptcy petition was filed *and* the trustee brings the action within the time specified in § 546(a)). State law, not § 546, determines when the triggering creditor's claim accrued.

Finally, the trustee argues that American Residential had a valid claim on the petition date in any event because IUFTA provides that a claim filed more than four years after the transfer date is still timely if it was filed "within one year after the transfer or obligation was or could reasonably have been discovered by the claimants," citing *Fidelity Nat. Title Ins. Co of New York v. Howard Sav. Bank*, 436 F.3d 836 (7th Cir. 2006) and 740 ILCS 160/10(a). The trustee fails to say, however, how the discovery rule applies to the facts here. Trustee's Response, p. 12. IDOR expressly concedes that the accrual date for purposes of § 22(h) is not always the transfer date and it does not contest that the discovery rule can extend the accrual date under § 22(h) beyond the transfer date. It argues that the trustee's argument nonetheless fails for two reasons.

IDOR first argues that there are no allegations of any "late" discovery that could support an accrual date later than the transfer dates. It contends that the timeliness of the action is an essential element of a claim before the Court of Claims and that the trustee has failed to plead a plausible basis for concluding that American Residential could have brought a viable claim

## STATEMENT

against IDOR on the petition date.  IDOR cites no authority for its contention that the trustee must allege specific facts regarding how a discovery rule applies to a limitations period in § 22(h) for the triggering creditor.

The court need not determine how much detail the trustee must allege regarding the viability of the triggering creditor's claim because IDOR is correct on its second argument:  the trustee has pleaded himself out of court on this issue regarding American Residential.[3]  The allegations of the amended complaint establish that American Residential should reasonably have suspected, if not actually discovered, fraudulent transfers more than a year before the petition date.  As the *Fidelity* court explained, "when a statute of limitations period does not begin to run until 'discovery,' the discovery referred to is merely discovery that the plaintiff has been wrongfully injured."  436 F.3d at 839 (citations omitted).  "He doesn't have to know who injured him.  He has the limitations period to discover that, draft his complaint, and file suit." *Id.*  The party need not know that particular fraudulent transfers occurred or to whom the transfers were made to trigger the one year discovery period.  *Id*.  "All you have to know *or suspect* is that such transfers are occurring; for knowing that, it is irresponsible to sit back and wait until the particular transfers are identified to you."  *Id.* at 840 (italics added).

The lynchpin of the trustee's fraudulent transfer claims is that a vice president of Mack told a vice president of American Residential in June 2014 that Mack would deplete its assets if American Residential did not agree to change their contract.  Amended Complaint, ¶ 28-29.  So American Residential had reason to suspect that Mack would make fraudulent transfers since that time.  The trustee also alleges that American Residential "eventually" filed suit against Mack and others on March 21, 2016.  Amended Complaint, ¶ 36.  This is more than one year before the petition date, March 24, 2017.  These allegations show that American Residential was "aware of the injury" - it must have suspected that Mack was making the fraudulent transfers its vice president threatened to make - by the time it filed its complaint against Mack.  In fact, the trustee's allegations in another adversary proceeding he filed explain why he made no specific argument here regarding how the discovery rule would permit American Residential to file suit against IDOR on the petition date.  In his amended complaint in *Peterson v. Colony American Finance (Mack Industries Ltd.)*, 19-ap-576, the trustee alleged that American Residential had not only discovered that Mack made fraudulent transfers before it filed its complaint in state court, it filed a motion for a temporary restraining order to stop any further transfers on the same day that

---

[3]A plaintiff typically does not have to allege facts that would defeat an affirmative defense like a statute of limitations but he may plead himself out of court by alleging facts that establish the defense.  *E.g., Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)**.**

STATEMENT

it filed suit - March 21, 2016.[4]  The trustee could not argue here in good faith that American Residential had not suspected or actually discovered that Mack was making fraudulent transfers as of March 24, 2016.

The allegations of the amended complaint show that the one-year discovery period for American Residential was triggered more than one year before the petition date.  American Residential could not have sued IDOR on the petition date for the transfers alleged so it cannot serve as the trustee's triggering creditor for his claims in this case.  This does not, however, end the inquiry.

4.  <u>Internal Revenue Service</u>

The trustee also alleges that the IRS is a triggering creditor whose rights he can assert under § 544(b).  He contends that the IRS has 10 years to try to collect taxes and that the transfers he seeks to avoid were made within that 10 year period.

---

[4]The trustee alleged the following in his amended complaint in *Colony*:

60. Relations between American Residential and Mack grew increasingly fraught after American Residential declared a default on December 2, 2014.

61. Eventually, on March 21, 2016, American Residential filed a complaint against Mack in Illinois state court.

62. That same day, American Residential sought a temporary restraining order against Mack explaining Mack's threats to dissipate assets and seeking a pre-judgment [sic] against all Mack's assets to prevent further dissipation.

63. American Residential later filed amended complaint naming the Debtors [two entities related to Mack] and many other Mack entities as respondents in discovery.

64. In its complaint and other filings, American Residential pointed out that Mack transferred millions of dollars to its affiliates and argued that Mack made these transfers as part of its scheme to transfer assets and hinder American Residential's ability to collect amounts owed under the parties' agreement.

Amended Complaint, ECF No. 30, ¶¶ 60-64 (Feb. 28, 2020)**.**

**STATEMENT**

The IRS filed a proof of claim for approximately $14,000. It seeks $1,600 for taxes due for the 2016 tax year that apparently were "unassessed" on the petition date. It also seeks $13,800 for the tax period ending December 31, 2013. It describes the "kind of tax" as "MISC PEN" and states that the tax was assessed on August 8, 2016. The "tax due" is identified as $0 so the court assumes the IRS is seeking to collect a penalty for a tax that was paid late but before the petition date.

The trustee contends that he can sue IDOR for transfers made up to 10 years before the petition date based on 26 U.S.C. § 6502. It provides that "where the assessment of any tax" has been made within the limitation period "properly applicable thereto" that tax "may be collected by levy or by a proceeding in court ... within 10 years after the assessment of the tax . . . ." 26 U.S.C. § 6502(a)(1). Section 6901(a) permits the IRS to collect an income tax, estate tax, or gift tax liability from a transferee of property of the taxpayer. 26 U.S.C. § 6901(a)(1)(A). As explained in *Ebner v. Kaiser, et al.* *(In re Kaiser)*, 525 B.R. 697, 709-10 (Bankr. N.D. Ill. 2014), § 6901 provides a procedural remedy against an alleged transferee but the IRS must establish liability under a state fraudulent transfer law.

The parties disagree about whether a bankruptcy trustee can invoke the United States' 10-year look-back period under § 544(b) to benefit only private parties - the creditors in this case. Courts are divided on this issue. *Compare Kaiser*, 525 B.R. 697, *with Wagner v. Ultima Homes, Inc. (In re Vaughn Co.)*, 498 B.R. 297 (Bankr. D.N.M. 2013). The court need not resolve the issue. As discussed above, IDOR acknowledges that the discovery rule applies to claims under IUFTA filed against the State in the Court of Claims. There is no basis in the amended complaint for concluding that the IRS had reason to believe that Mack was making fraudulent transfers before the petition date. The IRS therefore had a potentially timely claim against IDOR under IUFTA on the petition date without need to resort to the IRS's 10-year look-back period. IDOR has failed to establish that the IRS did not have a viable claim against it on the petition date.[5]

IDOR also argued in two sentences that the amended complaint should be dismissed because "intergovernmental tax immunity" bars the IRS from imposing taxes on the State. It cites two cases for this argument - *Davis v. Michigan Dept of Treasury*, 489 U.S. 803 (1989) and *South Carolina v. Baker*, 485 U.S. 505, 523 (1988). IDOR failed to explain why either case requires dismissal here. The argument is rejected as undeveloped.

---

[5] The trustee raised the discovery rule regarding American Residential but not the IRS. The rule appears to apply to all creditors. If the court is mistaken about this, the parties can address it at a later stage in the proceedings. The court has not determined that the IRS is an appropriate triggering creditor, only that IDOR has not established that it is *not* an appropriate triggering creditor.

**STATEMENT**

Finally, IDOR argues that dismissal is warranted because the taxes identified in the IRS's proof of claim do not fit within the categories identified in § 6901 that can form a basis for the IRS recovering from transferees - income tax, estate tax, and gift tax. It states that the IRS's claim lists two unliquidated periods for corporate income tax and federal unemployment tax. It contends that "no liability may exist for these periods" because the returns were not due until after the petition was filed. The trustee is correct in responding that the IRS's proof of claim is presumptively valid; no party has filed an objection to it. 11 U.S.C. § 502(a). In its claim, the IRS seeks to collect income taxes, which fall within § 6901(a). IDOR has failed to cite any authority supporting dismissal based on some potential future determination about whether Mack owed or payed income taxes for the unassessed tax years identified in the IRS's proof of claim. IDOR has not shown that the IRS did not have a viable claim to recover transfers under § 6901 and IUFTA on the petition date. The amended complaint will not be dismissed on this basis.

5. <u>Conclusion</u>:

IDOR has not demonstrated that the amended complaint should be dismissed because there is no triggering creditor who could have sued IDOR in the Court of Claims on the petition date to recover the transfers the trustee seeks to avoid. Its motion is denied.

Dated: April 29, 2021

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge